# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DWAYNE BROWN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LIEUTENANT OBOUDIN, et al.,<br><br>　　　　　　Defendants. | Case No. CV 15-8924-FMO (JEM)<br><br>AMENDED MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## **PROCEEDINGS**

On January 17, 2015, Steven Dwayne Brown ("Plaintiff"), proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

On June 10, 2016, Defendants Anthony Baudino (erroneously sued as Lieutenant Oboudin) and Dylan Butler filed a Motion to Dismiss. On July 13, 2016, Plaintiff filed an Opposition. On August 11, 2016, Baudino and Butler filed a Reply.

On October 11, 2016, Defendant Morales filed a Motion to Dismiss. On November 17, 2016, Plaintiff filed an Opposition. On December 6, 2016, Morales filed a Reply.

The Motions to Dismiss are now ready for decision. For the reasons set forth below, the Court finds that the Complaint should be dismissed with leave to amend for failure to comply with Fed. R. Civ. P. 8.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff has filed the instant suit against Defendants Baudino, Butler, and Morales, all of whom are Los Angeles County Sheriff's Department ("LASD") personnel. The Complaint is premised on a February 8, 2015 incident in which Plaintiff was sprayed with Oleoresin Capsicum spray ("OC spray" or "pepper spray").

Plaintiff alleges the following:

On February 8, 2015, Plaintiff was a pretrial detainee at the Men's Central Jail. (Complaint at 9, .) He was escorted from the Law Library in the Men's Central Jail to an area taped off and told to "face the wall." (Id.) Plaintiff complied, and he was handcuffed from behind. (Id.) Three minutes later, Morales and Butler arrived to Plaintiff's location and informed him that he would be moved to "Baker Row," where all pro per inmates were housed. (Id. at 10.) Plaintiff stated, "'No, I'm not going back to that tier.'" (Id.) The inmates from that tier had told Plaintiff in front of Butler "that they were going to 'f**k me up if I came back to that tier.'" (Id.) In response, Morales stated, "'If you don't head over there now, I'm going to order my deputies to spray you with pepper spray.'" (Id. at 11.) Plaintiff refused to comply and asked to speak with a watch commander. (Id.) He turned around and faced the wall, ceasing further communication with Morales. (Id.) Morales again warned Plaintiff that he would be sprayed with pepper spray. (Id.)

Morales left for a few minutes and returned with Baudino, who attempted to speak with Plaintiff about his refusal to go to Baker Row. (Id. at 12.) Plaintiff reiterated that he had been threatened by inmates on Baker Row and stated, "'I'm not going anywhere with this defendant S[e]rgeant Morales.'" (Id.) Baudino explained that the inmates who had threatened Plaintiff had been moved, and if he refused to move he would be pepper sprayed. (Id. at 13.) Plaintiff again refused to go, reiterating that it was not safe for him. (Id.)

2

Plaintiff then stopped speaking to Baudino. (Id.) He turned to face the wall and sat down cross legged with his hands cuffed behind him. (Id.) Baudino ordered Plaintiff to stand up and head to Baker Row or else he would be pepper sprayed. (Id. at 13-14.) Baudino told Morales to order his deputies to spray Plaintiff. (Id. at 14.) Morales told Butler and another deputy to have Plaintiff stand. (Id.) Plaintiff asked to go to G-Row (disciplinary segregation) instead of Baker Row, but Morales told Plaintiff he would go to Baker Row or be pepper sprayed. (Id.) Again, Plaintiff refused citing safety concerns. (Id.)

Butler and the other deputy let go of Plaintiff, who then fell to the floor. (Id. at 15.) Plaintiff faced the wall. (Id.) Butler then pepper sprayed Plaintiff. (Id. at 15-16.) The pepper spray hit Plaintiff in the face, eyes, ears, mouth, scalp, and groin. (Id. at 16.) Plaintiff suffered extreme pain from the pepper spray. (Id. at 18.) Plaintiff was subdued and was not offering any resistance at the time he was sprayed. (Id.)

Defendants sprayed Plaintiff in retaliation for his filing numerous grievances against Defendants in the past. (Id. at 22.) Morales ordered his deputies to spray Plaintiff in retaliation for his pursuit of grievances. (Id. at 23-25; Complaint Part 2 at 1.)

Plaintiff seeks the following relief:

1. A declaratory judgment that the use of OC spray on a handcuffed, subdued pretrial detainee is unlawful.
2. Compensatory damages.
3. Punitive damages.
4. An order requiring all Los Angeles County jail inmates with asthma to wear a wristband or bracelet identifying the inmate as suffering from asthma.
5. Medical treatment consistent with long term, residual, or permanent damage resulting from ingestion or exposure to OC spray.
6. An order allowing all pretrial detainees to choose between disciplinary segregation and being sprayed with OC spray.

7. An order that Plaintiff not be forced to go on a jail tier where Plaintiff fears for his safety.

(Complaint Part 2 at 21.)

## PLAINTIFF'S CLAIMS

Plaintiff assert a claim for excessive force against Morales and Butler in their individual capacities, and against Baudino in his individual and official capacities. (Complaint at 5.) He also appears to assert a claim of retaliation for exercising his first amendment right to file grievances against Morales and Butler in their individual capacities. (Id. at 22-25, Complaint Part 2 at 1.))

## PLEADING STANDARDS

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations

4

sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Id. at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

## DISCUSSION

I. **THE COMPLAINT SHOULD BE DISMISSED WITH LEAVE TO AMEND FOR FAILURE TO COMPLY WITH RULE 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (internal citation omitted). To comply with Rule 8, a plaintiff should set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996); see also

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (complaint must provide fair notice of which claims are asserted against which Defendants and the grounds upon which they rest). Conclusory allegations are insufficient. See Iqbal, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and citation omitted).

      Plaintiff's Complaint does not comply with the standards of Rule 8. Although the Court construes the Complaint as attempting to set forth a Fourteenth Amendment excessive force claim and a First Amendment retaliation claim, Plaintiff repeatedly references other claims and theories, including "atypical and significant hardship" (Complaint at 25) and Eighth Amendment cruel and unusual punishment (id. at 7), neither of which are applicable to a pretrial detainee. In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Supreme Court held that state law may create a protected liberty interest when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." However, Sandin's "atypical and significant hardship" test pertains only to convicted prisoners and does not pertain to pretrial detainees such as Plaintiff. See id.; see also Valdez v. Rosenbaum, 302 F.3d 1039, 1044 n.3 (9th Cir. 2002). Accordingly, Plaintiff's discussion of the "atypical and significant hardship" he suffered does not appear to be relevant in this action.

      In addition, Plaintiff cross-references "claims" and "causes of action" in a manner that is extremely confusing, which renders it difficult to understand how the "causes of action" relate to the legal claims asserted. Plaintiff is cautioned that he should not separate or cross-reference the "causes of action" and "claims." Rather, he should follow the format set forth in the form civil rights complaint and separately set forth each of his legal claims, followed by the supporting facts for each claim.

Thus, the Complaint should be dismissed with leave to amend for failure to comply with Rule 8.[1] Because Plaintiff is proceeding pro se, the Court sets forth below some additional guidance regarding Plaintiff's claims, which he should consider if he chooses to file an amended complaint.

## II. PLAINTIFF IS NOT REQUIRED TO PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that this action should be dismissed for failure to exhaust administrative remedies because Plaintiff "has not alleged full compliance" with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (See, e.g., Dkt. 64 at 13-15.) Defendants' argument is without merit.

Generally, dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must be brought and decided pursuant to a motion for summary judgment under Fed. R. Civ. P. 56. Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc). "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" Id. at 1166 (quoting Jones v. Bock, 549 U.S. 199, 204, 216 (2007)). Defendant bears the burden of proving that there was an available administrative remedy that the prisoner did not exhaust. Albino, 747 F.3d at 1172. If defendant meets this burden, then the burden shifts to plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. In adjudicating summary judgment on the issue of exhaustion, the court must view all the facts in the record in the light most favorable to the plaintiff. Id. at 1173.

---

[1] Defendants also move for a more definite statement. A motion for a more definite statement is made pursuant to Rule 12(e), which requires the filing of an amended pleading where the initial pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Court already has determined that an amended complaint is required for failure to comply with Rule 8 and, thus, it would be duplicative to order an amended pleading under Rule 12(e).

"In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Id. at 1166 (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), insofar as it held that failure to exhaust should be raised by defendants as an "unenumerated Rule 12(b) motion."). However, a plaintiff is not required to plead any facts concerning exhaustion. Rather, it is the defendant's burden, which the plaintiff is then required to rebut. Thus, if a prisoner fails to address exhaustion in his pleading, the defendant must file a motion for summary judgment. Albino, 747 F.3d at 1169-70.

This is not the rare case where review of Plaintiff's complaint demonstrates that he failed to exhaust administrative remedies. A pleading devoid of reference to administrative exhaustion does not equate to a finding that the prisoner did not exhaust. Thus, it would be improper to find that Plaintiff failed to exhaust his administrative remedies on the basis that he did not demonstrate exhaustion in the Complaint, which he is not required to do. Thus, the Complaint is not subject to dismissal for failure to exhaust administrative remedies.

### III.  CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF

Plaintiff seeks the following forms of prospective injunctive relief: (1) an order that Plaintiff not be forced to go on a jail tier where he fears for his safety; (2) medical treatment consistent with long term, residual, or permanent damage resulting from ingestion or exposure to OC spray; (3) an order allowing all pretrial detainees to choose between disciplinary segregation and being sprayed with OC spray; and (4) an order requiring all Los Angeles County jail inmates with asthma to wear a wristband or bracelet identifying the inmate as suffering from asthma. (Complaint Part 2 at 21.)

Plaintiff's claims arose from events that took place while he was a pretrial detainee in the custody of the LASD. Plaintiff is currently a postconviction inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Because Plaintiff is no longer in Defendants' custody, he cannot obtain the injunctive relief identified above

because he has been transferred to a CDCR facility and is no longer housed in Men's Central Jail. See, e.g., Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (concluding prisoner's claims for injunctive relief were moot because prisoner was transferred to a different facility); Darring v. Kincheloe, 783 F.2d 874, 877 (9th Cir. 1986) (same). Although there is an exception to mootness for situations that are "capable of repetition yet evading review," United States v. Brandau, 578 F.3d 1064, 1067 (9th Cir. 2009), the slight possibility that Plaintiff could be transferred to Men's Central Jail again is not substantial enough to warrant application of this exception, Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (concluding prisoner's "claim that he might be transferred back [to the same prison] some time in the future [was] 'too speculative' to prevent mootness").

It further appears that Plaintiff's requests for injunctive relief cannot be cured by amendment.

**IV.   OFFICIAL CAPACITY CLAIMS AGAINST BAUDINO**

Here, Plaintiff sues Baudino in his official capacity. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, Plaintiff's official capacity claims against Baudino are tantamount to claims against LASD. A local governmental entity, such as the LASD, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978). "In order to hold [a local government defendant] liable under § 1983, [Plaintiff] must show (1) that he possessed a constitutional right of which he was deprived; (2) that the [local government entity] had a policy; (3) that the policy amounts to deliberate indifference to [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations and internal quotation

marks omitted); Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). "There also must be a 'direct causal link' between the policy or custom and the injury, and [Plaintiff] must be able to demonstrate that the injury resulted from a 'permanent and well settled practice.'" Anderson, 451 F.3d at 1070 (citation omitted); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc).

Here, Plaintiff has failed to allege facts demonstrating official capacity liability. Plaintiff cites to various other lawsuits, but he fails to tie those lawsuits to the facts of this case. If Plaintiff chooses to file an amended complaint and assert claims against Baudino in his official capacity, he must identify a policy statement, regulation, officially adopted or promulgated decision, custom, or practice by which Baudino in his official capacity allegedly inflicted the injuries about which Plaintiff is complaining. He should not bring any official capacity claims if he cannot assert facts to support those claims. Conclusory or formulaic recitation of the elements of a Monell claim would be insufficient. See Iqbal, 556 U.S. at 678-79 (legal conclusions must be supported by factual allegations); Dougherty, 654 F.3d at 900 (finding that plaintiff's conclusory allegations "lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by Twombly.").

**V.   PLAINTIFF'S CLAIMS**

Plaintiff asserts two claims in the Complaint, as set forth above. To the extent that Plaintiff is attempting to assert additional claims, they are unclear. If Plaintiff is attempting to assert additional claims, they must be clearly and separately identified as such if Plaintiff chooses to file an amended pleading.

**A.   Excessive Force**

Plaintiff appears to assert an excessive force claim against Butler, Morales, and Baudino. Plaintiff was a pretrial detainee at the time of the alleged excessive force incident on February 8, 2015. The Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, applies to protect pretrial detainees from the use of excessive force

that amounts to punishment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); see also Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Bell v. Wolfish, 441 U.S. 520, 535 (1979). A pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state. Kingsley, 135 S. Ct. at 2472-73; see also Graham, 490 U.S. at 397 (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an investigatory stop). In determining whether the use of force was reasonable, the Court should consider factors including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473.

Because officers are often forced to make split-second decisions in rapidly evolving situations, the reasonableness of a particular use of force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 2473-74 (citing Graham, 490 U.S. at 396). Further, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'" violates the Constitution. Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d. 1028, 1033 (2nd Cir. 1973).

The facts construed in the light most favorable demonstrate that Plaintiff was actively and passively resisting moving to Baker Row. He was warned repeatedly that he needed to proceed to that location or be pepper sprayed. Despite these warnings, he was not compliant and continued to refuse to return to Baker Row. In these circumstances, it does not appear that the pepper spray was used to punish Plaintiff, but was used to maintain order and discipline in the jail setting. Because it is not clear that this claim cannot be cured by amendment, it is subject to dismissal with leave to amend.

**B.    Retaliation for Exercising First Amendment Rights**

Plaintiff asserts that Defendants Morales and Butler retaliated against him for exercising his First Amendment right to file administrative grievances. (Complaint at 21.) He states that he filed over ten grievances against Morales, including grievances stemming from a January 9, 2015 incident in which Morales ordered two other deputies to take Plaintiff to a cell, which resulted in the deputies dragging Plaintiff and aggravating his injured right knee. (Id. at 21-22.) Plaintiff state that he had filed over eleven grievances against Butler, including grievances alleging retaliatory placement into a disciplinary deprivation cell based on Butler's accusation that Plaintiff had flooded the tier with toilet water. (Id. at 23-25.)

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff's allegations are conclusory. The facts alleged do not support a finding that Butler and Morales pepper sprayed Plaintiff in retaliation for his filing grievances against them. Rather, the facts demonstrate that Defendants pepper sprayed Plaintiff because he repeatedly refused to return to Baker Row and was warned that he would be pepper sprayed if he did not comply. Moreover, even if Plaintiff has asserted enough facts to establish the first three elements, he has not asserted facts demonstrating that the alleged retaliatory actions chilled the exercise of his First Amendment rights, caused more than minimal harm, or did not reasonably advance a legitimate correctional goal, such as jail or

inmate safety. If Plaintiff chooses to file an amended complaint, he must allege facts that demonstrate each of the five factors listed above.

\* \* \* \*

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint no later than **April 27, 2017**, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order**

DATED: March 28, 2017

        */s/ John E. McDermott*
        JOHN E. MCDERMOTT
        UNITED STATES MAGISTRATE JUDGE